TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00781-CR







Lamont A. Buggs, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0960943, HONORABLE JON N. WISSER, JUDGE PRESIDING







 Appellant Lamont A. Buggs appeals his conviction for aggravated robbery. See
Tex. Penal Code Ann. § 29.03(a)(1) (West 1994). Following a bench trial on appellant's plea
of not guilty, (1) the trial court found appellant guilty and assessed his punishment at 18 years'
imprisonment. 


Point of Error


 Appellant advances a single point of error. He contends that the evidence is legally
insufficient to sustain his conviction. He particularly urges that the evidence is not sufficient to
show his guilt as a party to the offense of aggravated robbery. We will affirm the conviction.


Facts


 Aaron Prater testified that about 10 p.m. on September 4, 1995, he returned to his
Austin home after visiting family members in Port Arthur. As he arrived home, Prater observed
appellant Buggs, who lived next door, on Buggs' front porch drinking beer with Jonathan Bunton
and Calvin Dukes. Appellant and Bunton had been co-workers with Prater at Dell Computer
Company, and Dukes was a neighbor. Prater joined the group on appellant's porch. He
immediately heard Bunton talking about "making a lick." No one responded to Bunton's remarks.

 Prater left to purchase a six pack of beer and Bunton went with him. After
purchasing the beer at a store, Bunton asked Prater to drive him to Bunton's brother's house. 
Prater waited in the car for Bunton, who returned from his brother's house with something
wrapped in a towel. Bunton later displayed a .44 magnum handgun. He reiterated that he wanted
"to do a robbery," to which Prater replied: "Well, you handle your own business." Upon their
return, Prater went to his home and Bunton went to appellant's house.

 Prater revealed that appellant came to his house the next morning shaking his head. 
He told Prater that Bunton had a gun, that it went off, and that someone was killed. Prater turned
on his television set and "saw pictures of the crime scene."

 Douglas Doyna and his girlfriend, Victoria Chavez, lived at an apartment complex at 7800
Northcrest in Austin. On September 4, 1995, they gave a party to celebrate Victoria's new job
overseas and the opening game of the Dallas Cowboys' football season. By midnight, some eight
to twelve partygoers remained and were in the clubroom of the apartment complex. Victoria's
brother, Tony Chavez, was still at pool side where the party began. Doyna left the clubroom to
obtain another bottle of wine from his apartment. Shortly thereafter, Victoria left the clubroom
to obtain some toiletries from the apartment for the clubroom. As she walked along the sidewalk,
she saw a figure hunched down and moving among the cars in the parking lot. She thought it was
Doyna playing a joke on her. She cried out "I see you." Thereafter, she was confronted by a man
(later identified as Bunton) who pointed a gun at her and told her to be quiet. The man asked:
"What have you got on you?" Victoria grabbed the gun and began struggling with the man. She
screamed "He's got a gun" several times. Victoria was unable to get the gun but shoved Bunton,
who fell into some bushes. Bunton pursued Victoria as she ran and told her to get down on her
knees. She did not do so. At some point Tony Chavez, Victoria's brother, approached the scene
and Bunton shot him. Victoria ran to her brother's side, and at Bunton's command, got down on
her knees. Bunton pointed the gun at Victoria and tried to shoot her twice but the gun failed to
fire. Bunton ran off. Victoria, a paramedic by trade, began performing CPR on her brother, but
he was already dead.

 Doyna heard someone screaming while he was still in his apartment. Outside, he
saw Victoria, Tony, and another man in the parking lot. As Doyna proceeded to the
confrontation, he saw the man (Bunton) shoot Tony, observed the man's attempt to shoot Victoria,
and saw the man run from the parking lot. Doyna called the police.

 Austin Police Detective Robert Merrill investigated the case. Several months later
he received a tip that appellant might be a witness to the murder of Tony Chavez. Merrill
interviewed appellant, who gave a statement in which he revealed what he knew about the offense. 
He was permitted to leave the police station, agreeing that he would cooperate with the authorities. 
The statement was admitted into evidence.

 Appellant testified in his own defense. He stated that he was 23 or 24 years old at
the time of the offense and was working at McDonald's. After work on September 4, 1995, he
purchased a bottle of liquor, and went to the home of Calvin Dukes, a neighbor, where they drank
liquor and smoked marihuana. During the evening, Jonathan Bunton, a former co-worker at Dell
Computer Company appeared at Dukes' house. Appellant knew Bunton as "55." He did not hear
Bunton discussing "doing a lick," but when he and Dukes decided to go to Sixth Street in
downtown Austin, Bunton offered to give them a ride. At this time, appellant described himself
as "pretty drunk." Instead of taking his passengers to Sixth Street, Bunton drove them to an
apartment complex and stated that he "had a lick to do."

 Appellant stated that he told Bunton that he would not participate. For fifteen to
thirty minutes Bunton pressured Dukes to help. After being asked by Bunton several times to
help, appellant finally agreed, thinking Bunton was joking or was not serious about a robbery. 
Bunton gave appellant two bandannas. Appellant put one around his head and the other over his
face except for his eyes. He followed Bunton into the parking lot of the apartment complex. Up
to this point, appellant had not observed Bunton with any gun or weapon. He saw Bunton crouch
down and move among the vehicles on the parking lot. He heard the click of the door on the party
house, and then heard sounds of a struggle between Bunton and somebody else. Appellant
retreated and started back to the car in which he had arrived. When he reached the street, he
heard a gunshot. The car had been moved. Appellant then heard Bunton calling him. After
appellant got in the car, Bunton stated that he had shot someone, and for the first time appellant
saw a gun in Bunton's possession. They drove to a lake. Bunton walked down to the lake with
the gun and came back to the car without the gun. The trio then drove to Calvin Dukes' home and
appellant went to his own house. 

 It was appellant's testimony that he did not think Bunton was serious, that he went
along with the scheme because he thought it was a joke, and that his only assignment was to "stay
outside the party house and see that no one else went inside while Bunton was there." It was not
his intention to participate in any robbery or murder.


Parties


 Both the State and appellant agree that the issue presented is whether appellant is
guilty as a party to the offense of aggravated robbery. Section 7.01(a) of the Penal Code provides
in relevant part:


A person is criminally responsible as a party to an offense if the offense is
committed by . . . . the conduct of another for which he is criminally responsible
. . . .



Tex. Penal Code Ann. § 7.01(a) (West 1984).



The Penal Code further provides:


 (a) A person is criminally responsible for an offense committed by the conduct of
another if:


* * * *



 (2) acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense.



Tex. Penal Code Ann. § 7.02(a)(2) (West 1994).


 Under the law of parties, the State is able to enlarge a defendant's criminal
responsibility to acts in which he may not be the primary or principal actor. See Goff v. State, 931
S.W.2d 537, 544 (Tex. Crim. App. 1996), cert. denied, ___ U.S. ___, 117 S. Ct. 4438 (1997);
Romo v. State, 568 S.W.2d 298, 300 (Tex. Crim. App. 1977) (op. on reh'g). Facts which make
a person criminally responsible for the conduct of another need not be alleged in the indictment. 
See Swope v. State, 805 S.W.2d 442, 444 (Tex. Crim. App. 1991). The law of parties is
applicable in a bench trial, as well as in a jury trial. See Diaz v. State, 902 S.W.2d 149, 151
(Tex. App.--Houston [1st Dist.] 1995, no pet.).

 Before undertaking a determination of the legal sufficiency of the evidence to
support appellant's conviction as a party to the robbery, we must further examine the law of
parties. When an accused promotes or assists in the commission of an offense, he also shares the
criminal responsibility. See Haddad v. State, 860 S.W.2d 947, 950 (Tex. App.--Dallas 1993, pet.
ref'd). If the State is to prove the accused's guilt as a party, it must first prove the guilt of another
person as the primary actor. See Richardson v. State, 879 S.W.2d 874, 882 (Tex. Crim. App.
1993), cert. denied, 513 U.S. 1085 (1995); Forbes v. State, 513 S.W.2d 72, 79 (Tex. Crim. App.
1974), cert. denied, 420 U.S. 910 (1975); Godwin v. State, 899 S.W.2d 387, 389 (Tex.
App.--Houston [14th Dist.] 1995, pet. ref'd). In order to establish liability as a party, it must be
shown that, in addition to the illegal conduct by the primary actor, the accused harbored the
specific intent to promote or assist the commission of the offense. See Lawton v. State, 913
S.W.2d 542, 555 (Tex. Crim. App. 1995), cert. denied, 117 S. Ct. 88 (1996); Tucker v. State,
771 S.W.2d 523, 530 (Tex. Crim. App. 1988), cert. denied, 492 U.S. 912 (1989); Garcia v.
State, 871 S.W.2d 279, 281 (Tex. App.--El Paso 1994, no pet.) (holding evidence must show
conduct constituting the offense plus an act or acts by accused done with the intent to promote or
assist such conduct). The accused must know that he was assisting in the offense's commission. 
See Amaya v. State, 733 S.W.2d 168, 174-75 (Tex. Crim. App. 1986); Price v. State, 911 S.W.2d
129, 131 (Tex. App.--Corpus Christi 1995, pet. ref'd). The agreement, if any, must be before
or contemporaneous with the criminal event. See Beier v. State, 687 S.W.2d 2, 3-4 (Tex. Crim.
App. 1985); Miranda v. State, 813 S.W.2d 724, 732 (Tex. App.--San Antonio 1991, pet. ref'd). 
The evidence must show that at the time of the commission of the offense, the parties were acting
together, each doing some part of the execution of the common design. See Brooks v. State, 580
S.W.2d 825, 831 (Tex. Crim. App. 1979); Thomas v. State, 915 S.W.2d 597, 599-600 (Tex.
App.--Houston [14th Dist.] 1996, pet. ref'd); Cornejo v. State, 871 S.W.2d 752, 755-56 (Tex.
App.--Houston [1st Dist.] 1993, pet. ref'd). The essential principle of parties' culpability is the
common design to do a criminal act. See Brooks, 580 S.W.2d at 831.

 While an agreement of the parties to act together in a common design seldom can
be proved by direct evidence, reliance may be had on the actions of the parties, showing by either
direct or circumstantial evidence, an understanding and common design to do a certain act. See
Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940,
(1987); Ex parte Prior, 540 S.W.2d 723, 727-28 (Tex. Crim. App. 1976); Bratcher v. State, 771
S.W.2d 175, 183 (Tex. App.--San Antonio 1989, no pet.). Circumstantial evidence alone may
be sufficient to show that one is a party to the offense. See Wygal v. State, 555 S.W.2d 465, 469
(Tex. Crim. App. 1977); see also Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App.
1987).

 The State must show more than mere presence to establish participation in a
criminal offense. See Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981). Mere
presence or even knowledge of an offense does not make one a party to the offense. See Oaks v.
State, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982); Acy v. State, 618 S.W.2d 362 365 (Tex.
Crim. App. 1981); see also Monroe v. State, 81 S.W.2 726, 727 (Tex. Crim. App. 1904) (holding
the mere fact that defendant, who was present but did not participate or aid in homicide, concealed
the offense for a time or failed to report killing, did not make him guilty of an offense). 
Nevertheless, mere presence is a circumstance tending to prove that a person is a party to the
offense and when taken with other facts may be sufficient to show that he was a participant. See
Wygal, 555 S.W.2d at 469. In determining whether an accused participated in the offense as a
party, the fact finder may examine the events occurring before, during, and after the commission
of the offense. See Thompson v. State, 697 S.W.2d 413, 416 (Tex. Crim. App. 1985); Diaz, 902
S.W.2d at 151-52.






Proof


 The State proved that Jonathan Bunton was the primary actor in the offense of
which appellant was convicted. There was evidence that appellant was present and knew that an
offense was to be committed. According to appellant's own testimony and extrajudicial statement,
he and Bunton discussed doing "this jack," "making a lick" or robbery for about thirty minutes
before he agreed to participate with Bunton by standing at the party house door "to make sure that
nobody was going to come in on him" or to "watch his back." When appellant and Bunton left
the car, both donned bandannas to avoid recognition. Appellant then followed Bunton onto the
parking lot pursuant to the agreement.

 Appellant stated that he left the scene when he heard the sounds of a struggle. 
Appellant disclaimed any intent to participate in any robbery or murder. Intent and knowledge,
however, can be inferred from the acts, conduct, and words of the accused. See Dues v. State,
634 S.W.2d 304, 305 (Tex. Crim. App. 1985); Castellano v. State, 810 S.W.2d 800, 807 (Tex.
App.--Austin 1991, no pet.). Proof of a culpable mental state generally relies upon circumstantial
evidence. See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). Mental culpability
is of such a nature that it generally must be inferred from the circumstances under which the
prohibited act occurred. Thus, the trier of fact may infer intent from any facts in evidence which
tend to prove the existence of such intent. See Skillern v. State, 890 S.W.2d 849, 880 (Tex.
App.--Austin 1994, pet. ref'd).

 There was evidence, both direct and circumstantial, that appellant knew of Bunton's
intent to commit robbery and acted with intent to assist in the commission of the offense by aiding
or attempting to aid in the robbery. On the other hand, appellant insisted that he did not know
Bunton was serious, did not know at the time that Bunton had a gun, (2) and he did not intend to
commit robbery.


Legal Sufficiency


 In determining whether the evidence is legally sufficient to support the judgment,
we view the evidence in the light most favorable to the verdict, asking whether any rational trier
of fact could have found beyond a reasonable doubt all the essential elements of the offense. See
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim.
App. 1996); Skillern, 890 S.W.2d at 879. 

 The evidence, viewed in this light, and all reasonable inferences drawn therefrom
are evaluated in this review. See Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App.
1995). A reviewing court must evaluate all evidence, rightly or wrongly admitted, which the trier
of fact was permitted to consider. See Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App.
1997); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Beltran v. State, 728
S.W.2d 382, 389 (Tex. Crim. App. 1987). The standard for review is the same for both direct
and circumstantial evidence cases. See Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App.
1992). In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does
not realign, disregard, or weigh the evidence. Rodriguez v. State, 939 S.W.2d 211, 218 (Tex.
App.--Austin 1997, no pet.).

 The trial court is the trier of fact in a bench trial. It is the sole judge of the
credibility of the witnesses and the weight to be given the testimony. See Joseph v. State, 897
S.W.2d 374, 376 (Tex. Crim. App. 1995); Mattias v. State, 731 S.W.2d 936, 940 (Tex. Crim.
App. 1987), cert. denied, 488 U.S. 831 (1988). The trial court may accept or reject all or any
part of any witness's testimony. See Mattias, 731 S.W.2d at 940. The trial court is not required
to believe a defendant's testimony or accept his version of the facts. See Id. Reconciliation of
evidentiary conflicts is solely the function of the trial court. See Miranda v. State, 813 S.W.2d
724, 733-34 (Tex. App.--San Antonio 1991, pet. ref'd).

 Viewing the evidence in the light most favorable to the trial court's judgment, we
conclude that a rational trier of fact could have found beyond a reasonable doubt all the essential
elements of aggravated robbery and appellant's guilt as a party to the offense of which he was
convicted. The sole point of error is overruled.








 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Jones and Onion*

Affirmed

Filed: December 10, 1998

Do Not Publish






















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The State abandoned the capital murder allegations in the indictment. Appellant waived trial
by jury, and was tried for the "lesser-included offense."
2. In his statement, appellant described the gun he eventually saw as one with "a long barrel, about
a foot long; and it was a big-ass gun." Bunton was described as small-framed and wearing a T-shirt
and shorts at the time of the robbery.



 fact could have found beyond a reasonable doubt all