**Ramon Domingo DIAZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–00375–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 15, 1995.

George O. Jacobs, Houston, for appellant.

John B. Holmes, Jr., Calvin Hartmann, Casey O'Brien, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and TAFT, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

After a bench trial, the court found appellant, Ramon Domingo Diaz, guilty of the felony of illegal investment of funds to further the commission of the offense of possession of cocaine. The trial court assessed punishment at nine years imprisonment and a $50,000 fine. In one point of error, appellant challenges the legal sufficiency of the evidence. We affirm.

### Background

In early May of 1993, an informant told Pasadena Police Officer Rudy Amador that appellant wanted to buy a large amount of cocaine. Amador contacted appellant for the first time on May 5, 1993. After several conversations, Amador and appellant met at a gas station under the surveillance of other Pasadena police officers. During their conversation, appellant told Amador that he wanted to purchase 50 kilograms of cocaine. Amador replied that 50 kilos was too much, but that he could obtain 29 kilos for $16,000 per kilogram. Appellant agreed to purchase 29 kilos, and said he would page Amador when he had the money.

Over the next few days, appellant and Amador negotiated the amount and price of the cocaine. Eventually, appellant and Amador agreed to meet at Kip's Restaurant in Pasadena. On May 18, Amador met appellant at the restaurant, where they attempted to finalize the agreement. Appellant told Amador that there were other individuals involved in the transaction, and that "he was just the broker who was negotiating for others." Appellant also told Amador that his fee was approximately $2000 per kilogram. Appellant and Amador were unable to reach an agreement.

On May 26, appellant called Amador and told him that he was ready to purchase 10 kilograms of cocaine. Amador met appellant at Molina's Boot Store, where appellant told Amador to follow him to the location of the money. Amador followed appellant to the El Mariachi bar. At the El Mariachi, appellant paged someone and told Amador that the money would arrive shortly. A man appellant called "Chuy" (later identified as Jesus Fuentez) arrived at the bar and had a conversation with appellant. A few minutes later, another man, later identified as Jimmy Vitela, arrived and told appellant and Chuy that the money was in the back seat of a car in the parking lot.

Amador, Chuy, and appellant then went out to the parking lot. Amador and Chuy got inside the car, and the appellant stood by the side. Chuy showed Amador a black backpack, which Amador opened to find a large amount of currency. Amador put the backpack behind the car seat, got out of the car, and told appellant to follow him to Amador's house to pick up the cocaine. As Amador left the parking lot, he signalled the surveillance team to move in. As appellant followed Amador, he was pulled over and arrested by two patrol units. On cross-examination, Amador admitted that his understanding of appellant's role in the transaction was that appellant was the middle man or broker.

### Sole point of error

◼ In his sole point of error, appellant contends that there is no evidence that he "financed or invested" funds to further the offense of possession of cocaine. Appellant readily concedes that he was "being paid for his services as a broker to set up the transaction." He argues that because the money used to purchase the cocaine was not his, he did not "finance" the transaction.

◼ In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991).

◼ We are unable to agree with appellant's position. The terms "finance" and "invest" are broad enough to include appellant's conduct. In *Jordan v. State*, 816 S.W.2d 89 (Tex.Crim.App.1991), the Court of Criminal Appeals held that because the terms "finance" and "invest" are not defined in the Code,

> we apply the rules of grammar and common usage to determine their meaning.... 'Finance' is defined as 'to raise or provide funds or capital for' or 'to furnish with necessary funds.' Webster's Ninth New Collegiate Dictionary, p. 463 (1985). 'Invest' is defined as 'to commit [money] in order to earn a financial return.'

*Id.* at 92. In *Jordan*, evidence that money was readily available and was being used to set up the purchase of cocaine was sufficient to support the appellant's conviction for illegal investment despite the fact that there was no actual transfer of funds. *Id.* at 92.

In this case, there was no actual exchange of money for cocaine. However, appellant, through several conversations with Amador, indicated that he would have the money to purchase the cocaine. Appellant was also present when Amador counted the money to be used to purchase the cocaine.

Under *Jordan*, there is sufficient evidence to find appellant guilty of illegal investment. The terms "finance" and "invest" include "to raise" or "to commit money by agreement in order to earn a financial return." *Id.* at 92. Appellant's conduct clearly fits these descriptions. In addition, recent decisions by two of our sister courts support this conclusion. *Beasley v. State*, 838 S.W.2d 695, 706 (Tex. App.—Dallas 1992, pet. ref'd), *cert. denied*, — U.S. —, 114 S.Ct. 451, 126 L.Ed.2d 384 (1993); *Howard v. State*, 890 S.W.2d 514, 517 (Tex.App.—Beaumont 1994, no pet.). In *Beasley*, the court stated that § 481.126 is not limited to an accused's investment of personal funds. 838 S.W.2d at 706. The court held that the terms "finance" and "invest" were broad enough to encompass the defendant's personal conduct. *Id.* Similarly, in *Howard*, the court found sufficient evidence through audio tape recordings to affirm appellant's conviction as a party for illegal investment, even though appellant himself had no money to expend or invest. 890 S.W.2d at 517. We hold the evidence sufficient to support appellant's conviction as a primary actor. *Jordan*, 816 S.W.2d at 92.

◼ In addition, although appellant does not address the law of parties, the State relies on TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994) to refute appellant's insufficiency point of error. TEX.PENAL CODE ANN. § 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Facts which make a person criminally responsible for the conduct of another need not be alleged in the indictment. *Swope v. State*, 805 S.W.2d 442, 444 (Tex. Crim.App.1991). If the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment. *Id.* It is appropriate for a judge to consider the law of parties in a bench trial. *Becker v. State*, 840 S.W.2d 743, 746 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

◼ In determining whether appellant participated in the offense as a party, the factfinder may examine the events occurring before, during and after the commission of

the offense. *Thompson v. State,* 697 S.W.2d 413, 416 (Tex.Crim.App.1985); *Becker,* 840 S.W.2d at 746. Evidence is sufficient to support a conviction under the law of parties where the actor is physically present and encourages the commission of the offense either by words or other agreement. *Cordova v. State,* 698 S.W.2d 107, 111 (Tex.Crim. App.1985), *cert. denied,* 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). Mere presence alone will not make one a party to an offense; nevertheless, it is a circumstance tending to prove that a person is a party to the offense and when taken with other facts may be sufficient to show that he was a participant. *Wygal v. State,* 555 S.W.2d 465, 469 (Tex.Crim.App.1977).

In this case, there was ample evidence that appellant conversed with Amador several times by phone and in person. During several of those conversations, appellant revealed to Amador that he was the broker negotiating for others. Appellant was present while Amador and Chuy counted the money inside the car. Appellant even concedes on appeal that he brokered the transaction.

We hold that the evidence was sufficient to support appellant's conviction under the law of parties. Because the evidence was sufficient to support appellant's conviction as either a party or primary actor, we overrule appellant's sole point of error.