Opinion issued November 18, 2004





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00894-CR




JASON JARRETT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 33584




MEMORANDUM OPINION

          Appellant Jason Jarrett pleaded not guilty to engaging in organized criminal
activity and to the alleged lesser included offense of aggravated kidnapping. The trial
court granted Jarrett’s motion for instructed verdict as to organized criminal activity
and denied his motion for instructed verdict as to the lesser included offense of
aggravated kidnapping. A jury convicted Jarrett of aggravated kidnapping and
assessed punishment at forty years’ confinement. On appeal, Jarrett contends that the
trial court erred in denying his motion for instructed verdict. We hold that the trial
court properly denied the motion for instructed verdict and we therefore affirm. Facts
          On or about July 20, 2000, Ivan Floyd, the complainant, brought a man named
“Flip,” who remains unidentified, to Jarrett’s apartment to purchase codeine syrup.


 
During the transaction, Flip fled with the drug. Jarrett and Floyd proceeded, in
Jarrett’s Volvo, to look for Flip.


 When they were unable to find Flip, Jarrett dropped
Floyd off at a nearby gas station. Later that day, Floyd accompanied Jarrett back to
Jarrett’s apartment so that Floyd could cut someone’s hair. When they arrived, several
people were already present in Jarrett’s apartment.



          Once inside the apartment, one of the individuals instructed Floyd, at gunpoint,
to lie spread eagle on the floor.


 A member of the group bound Floyd’s hands behind
his back and his ankles together with duct tape. Floyd lay on the ground for
approximately six hours before someone transferred him to a chair and blindfolded
him with a bandana.


 During this time, various people in the apartment kicked Floyd,
burned him with cigarettes, beat him with a firearm, and threatened his life. Jarrett
questioned Floyd on the whereabouts of Flip and the codeine syrup. Jarrett also
carried on discussions with the other people in the room. Except for references to the
street gang, “the Black Disciples,” Floyd was unable to hear what they were saying.


 
Floyd testified at trial that Jarrett was present in the apartment at all times, that no one
tried to prevent these events, and that everyone present, including Jarrett, was acting
together.
          Floyd testified that, later that same day, an unidentified person from the group
grabbed his arms and walked him, still blindfolded, out of the apartment, placing him
in the trunk of a car. He testified that he was unsure of who was in the car, but
because of the open trunk, he thought the car was the same Volvo he had been in
earlier. Upon arriving at a remote location, someone shot Floyd from behind three
times—in the back, left shoulder, and left side.


 Floyd thought he heard Jarrett’s
voice after the shooting, although he was not certain.
          After the car drove away, Floyd got up and removed the blindfold. Despite
great pain and thinking he was going to die, Floyd walked down the road, removing
the duct tape, leaving it at various points on the road, and eventually dropping the
bandana. He walked about four-tenths of a mile to a neighboring residence, where the
homeowner called the police. 
          When a police officer arrived at the residence, Floyd told him he had been shot
within the last thirty minutes and that Jarrett, among others, had kidnapped him. 
Deputy James Thornton, who was the first officer to arrive at the scene, testified that
Floyd was severely injured; he was bleeding and sweating heavily; he was holding his
hands over his injuries; and he was complaining of dizziness. Based on the severity
of Floyd’s injuries, Officer Thornton believed Floyd was going to die. At the shooting
scene, police investigators found blood, three fired shotgun casings and two live
shotgun shells. Investigators also found the duct tape and the bandana on the road. 
Floyd was life-flighted to the hospital, and survived his injuries.Sufficiency of the Evidence
          In his sole issue on appeal, Jarrett contends that the trial court erred in denying
his motion for instructed verdict based on legal and factual insufficiency of the
evidence to support the conviction for aggravated kidnapping. Legal sufficiency of
the evidence is the appropriate standard of review for the denial of an instructed
verdict. Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); Youens v.
State, 988 S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Jarrett’s
challenge to the denial of the instructed verdict in this case thus is a challenge to the
legal sufficiency of the evidence, and not, as he suggests, to the legal and factual
sufficiency of the evidence. When determining whether a conviction is supported by
legally sufficient evidence, we view the evidence in the light most favorable to the
verdict, and determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Swearingen v. State, 101 S.W.3d 
89, 95 (Tex. Crim. App. 2003); Howley v. State, 943 S.W.2d 152, 155 (Tex.
App.—Houston [1st Dist.] 1997, no pet.). We consider all of the evidence presented
at trial, but we do not re-weigh the evidence or substitute our judgment for that of the
jury. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jury, as the trier
of fact, is the sole judge of the credibility of the witnesses. Grimes v. State, 135
S.W.3d 803, 808 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing Obigbo v.
State, 6 S.W.3d 299, 304 (Tex. App.—Dallas 1999, no pet.)). 
          Organized Criminal Activity
          Jarrett contends that the State failed to prove the elements of organized criminal
activity. Specifically, he asserts that the evidence is insufficient to show that he was
a person with the “intent to establish, maintain, or participate in a combination,” who
committed or conspired to commit aggravated kidnapping. See Tex. Pen. Code Ann.
§ 71.02(a)(1) (Vernon Supp. 2004-2005). The trial court granted Jarrett’s motion for
instructed verdict as to this crime; therefore, he received the relief he requested on this
issue. Accordingly, we do not address the legal and factual sufficiency of the evidence
related to the organized criminal activity charge, for which he was acquitted. 
          Aggravated Kidnapping
          The trial court denied Jarrett’s motion for instructed verdict as to the lesser
included offense of aggravated kidnapping and the jury convicted him of this offense.


 
“A person commits aggravated kidnapping if he intentionally or knowingly abducts
another person with the intent to inflict bodily injury on him, or intentionally or
knowingly abducts another person and uses or exhibits a deadly weapon during the
commission of the offense.” Tex. Pen. Code Ann. § 20.04(b) (Vernon 2003).
“‘Abduct’ means to restrain a person with intent to prevent his liberation by secreting
or holding him in a place where he is not likely to be found or using or threatening to
use deadly force.” Tex. Pen. Code Ann. § 20.01(2) (Vernon Supp. 2004-2005). 
“‘Restrain’ means to restrict a person’s movements without consent, so as to interfere
substantially with the person’s liberty, by moving the person from one place to another
or by confining the person. Restraint is ‘without consent’ if it is accomplished by
force, intimidation, or deception.” Tex. Pen. Code Ann. § 20.01(1)(A) (Vernon
Supp. 2004-2005).
          Jarrett contends that the evidence is legally insufficient to show that he intended
to “establish, maintain, or participate in a combination” because there is no evidence
that he participated in the kidnapping, beating, and shooting of Floyd. See Tex. Pen.
Code Ann. § 71.02(a) (Vernon Supp. 2004-2005). Specifically, Jarrett contends that
the evidence is insufficient to show that he was a direct participant in the abduction
of Floyd, that he ever had custody of a firearm, that he was involved in Floyd’s
beating, that he was involved in transporting him, or that he could be placed at the
scene of the shooting. This contention ignores the fact that Jarrett was not convicted
of organized criminal activity but rather, the lesser included offense of aggravated
kidnapping. 
          While the mere presence of an accused at the scene of an offense will not, by
itself, make one a party to an offense, it is nevertheless a circumstance tending to
prove that a person is a party to the offense and, together with other facts, may be
sufficient to show that he was a participant. Wygal v. State, 555 S.W.2d 465, 469 n.3
(Tex. Crim. App. 1977); Diaz v. State, 902 S.W.2d 149, 152 (Tex. App.—Houston [1st
Dist.] 1995, no pet.). In determining whether Jarrett participated in the offense as a
party, a fact finder may examine the events occurring before, during, and after the
commission of the offense. Diaz, 902 S.W.2d at 151-52. “A person is criminally
responsible as a party to an offense if the offense is committed by his own conduct,
the conduct of another for which he is criminally responsible, or by both.” Tex. Pen.
Code Ann. § 7.01(a) (Vernon 2003); see also Cordova v. State, 698 S.W.2d 107, 111
(Tex. Crim. App. 1985) (“[e]vidence is sufficient to support a conviction under the law
of parties where the actor is physically present and encourages the commission of the
offense either by words or other agreement.”); Bryant v. State, 982 S.W.2d 46, 49
(Tex. App.—Houston [1st Dist.] 1998, pet. ref’d) (“evidence must show that parties
acted together at time of offense, each contributing to its execution.”); Koontz v. State,
868 S.W.2d 27, 29 (Tex. App.—Fort Worth 1993, pet. ref’d) (holding that appellant’s
presence with his companions aided or attempted to aid the commission of aggravated
robbery by overwhelming the victim because of the sheer number of people involved). 
          Floyd testified at trial that he accompanied Jarrett, on the pretense of giving
someone a haircut, to Jarrett’s apartment in Jarrett’s car.


 Several people were already
present in the apartment and when Floyd entered they instructed him, at gunpoint, to
lie on the floor where they bound his arms and legs with duct tape. He was on the
floor for approximately six hours before they moved him to a chair and blindfolded
him. During this time, Jarrett questioned Floyd on the whereabouts of Flip and the
whereabouts of his missing drug. Various people in the apartment burned Floyd with
cigarettes, beat, kicked, and threatened his life. Floyd testified that Jarrett was present
at all times, worked together with the others, and did nothing to prevent the events. 
Floyd also testified that two people in the apartment had firearms. 
          Floyd further testified that he was then transported in the trunk of Jarrett’s car
to a remote location, where he was shot three times. Floyd could not identify who was
present at the shooting because he was still blindfolded, but he testified that, although
he could not be sure, he thought he heard Jarrett’s voice. When the car drove away,
he removed the blindfold, got up, and walked down the road to a nearby home, where
the owner called the police. 
          Deputy Thornton testified that he thought Floyd was going to die to support the
fact that Floyd was severely injured. Deputy Thornton further testified that Floyd told
him that Jarrett, among others, kidnapped him. See Tex. R. Evid. 803(2) (a statement
relating to a startling event made while the declarant was perceiving the event, or
immediately thereafter is admissible as an exception to the hearsay rule). The State
also presented pictures of Floyd’s gunshot wounds, the shooting scene, the live bullets
and casings found at the shooting scene, the pieces of duct tape on the road, the
bandana, and the scene where Floyd sought help.
          Jarrett contends that there is no evidence linking him to the shooting scene. An
abduction, however, is a continuous, ongoing event—in this case, one that continued
from the time Jarrett brought Floyd to the apartment to the time Floyd was driven to
the remote location and shot. See Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim.
App. 2000). Floyd testified that Jarrett drove him to the apartment, that he was present
in the apartment at all times, that he questioned him, that he was working together with
the others, that he did nothing to prevent the events, and that two people in the
apartment had firearms. This evidence supports a finding that Jarrett aided the
commission of an aggravated kidnapping. See Koontz, 868 S.W.2d at 29.
          Jarrett further contends that the State did not present the apartment lease as
evidence that the apartment belonged to him, nor did it introduce evidence proving
that he owned the Volvo. The State merely presented Floyd’s testimony concerning
who lived at the apartment and owned the car. The jury is the sole judge of the
credibility and weight given to Floyd’s testimony and it is entitled to believe or
disbelieve all or any part of his testimony. See Grimes, 135 S.W.3d at 808; McKinny
v. State, 76 S.W.3d 463, 469 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The fact
that other evidence was not presented to the jury does not, by itself, make the evidence
legally insufficient, and the jury is free to accept or reject competing theories of
causation and alternate possibilities. Goodman v. State, 66 S.W.3d 283, 287 (Tex.
Crim. App. 2001); see also Wyatt v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)
(holding reconciliation of evidentiary conflicts is within exclusive province of jury). 
          Viewing the evidence in the light most favorable to the verdict, a rational jury
could have found the essential elements of aggravated kidnapping beyond a reasonable
doubt. See Swearingen, 101 S.W.3d at 95. We therefore conclude that the evidence
is legally sufficient to support Jarrett’s conviction for aggravated kidnapping.
Conclusion
          We hold that the trial court properly denied Jarrett’s motion for instructed
verdict as to the aggravated kidnapping charge. We therefore affirm the judgment of
the trial court.
 
 
                                                                        Jane Bland
                                                                        Justice
 
Panel consists of Justices Taft, Jennings, and Bland.
Do not publish. Tex. R. App. P. 47.2(b).