Opinion issued May 19, 2005
























In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01063-CR




JALAMAN ABDOUL MARENAH, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 971665




MEMORANDUM OPINION

          Appellant, Jalaman Abdoul Marenah, was indicted for aggravated robbery
based on his role as the alleged getaway driver when his companions robbed the
employees of a pawnshop at gunpoint. See Tex. Pen. Code Ann. § 29.03 (Vernon
2003). Appellant pleaded not guilty. A jury convicted appellant and assessed
punishment at confinement for eight years.
          In two issues, appellant contends that the evidence was legally and factually
insufficient to support his conviction.
          We affirm.
BACKGROUND
          On December 17, 2003, three men robbed the employees of Cash America
Pawn in southwest Houston. Complainant Soledad Fuentes, the manager of the
pawnshop, was talking with a customer when she noticed a man in a black mask and
hood walking around in front of the store carrying a gun. Fuentes pressed the silent
alarm. The hooded man, later identified as Dewayne Felder, entered the store and
pointed a gun at a clerk, Mario Ramos. Felder told everyone to get down on the floor
and asked for the manager. Fuentes stood up and identified herself. Felder pointed
the gun at her and instructed her to empty the cash registers. Fuentes complied,
emptying the cash into Felder’s bag. Felder then forced Fuentes to the main safe,
which was in a separate office, and made her empty cash and jewelry from the safe
into his bag. When they returned to the main area of the store, Fuentes saw a second
gunman holding Ramos.
          The second gunman, later identified as Lionell McShan, had come in while
Fuentes and Felder were in the office. McShan, who was wearing a black mask, a
hood, and a blue hat, entered the store and pointed a gun at Ramos. McShan forced
Ramos to the jewelry cases and instructed Ramos to fill a duffel bag. 
          While Ramos filled the duffel bag, a customer, Kent Allen, entered the
pawnshop. On his way in, Allen had noticed a green car in the parking lot with a
towel over it’s license plate. Allen had also noticed that its engine was running and
a person was sitting in the driver’s seat. Allen went into the pawnshop and saw
McShan holding the gun on Ramos. McShan told Allen to get down on the floor. 
Another customer, who was crouched near the front door, ran out. Felder saw him
and yelled, “One of them got away. Let’s go, let’s go.”  Felder and McShan ran out
of the store, jumping over Allen, who was lying in the doorway.
          Ramos saw Felder and McShan run outside and get into a green Nissan Sentra,
which was reversing to pick the men up. After the men jumped in, the car screeched
its tires as it sped away. A police car fell into immediate pursuit.
          Deputy Danny Green, of the Harris County Constable’s Office, was on patrol
in the area when he was dispatched to the pawnshop because the silent alarm was
triggered. As he approached, he observed a green car with a towel over its rear 
license plate backing up rapidly. The car then slowed to let a man with a duffel bag
and a gun climb into the back seat and then sped away. Green thought he could see
two other people already in the car. Green pursued the car for about a mile, through
a 35 mile-per-hour zone, at a rate of 60 miles per hour. The car stopped briefly at a
red light, attempted to make a left turn from the extreme right lane, and crashed into
a light pole. Green saw a gun thrown from a back-seat window. 
          Green stopped his patrol car in front of the wrecked vehicle and noticed a towel
also covering the front license plate. As he approached the car, he could see that
there were three occupants. The driver, later identified as appellant, and Felder were
seriously injured. Green ordered the other passenger, McShan, out of the car and
arrested him. Green recovered the gun that had been thrown out of the window and
determined that it was loaded. A large amount of cash and jewelry was recovered
from inside the car, but a second gun was not found. 
          Ramos reported that he had recognized Felder’s voice during the robbery. 
Felder worked at a tattoo parlor in the same strip center and frequently came into the
pawnshop as a customer. Felder had also come into the pawnshop asking questions,
such as how often the employees go to the bank. 
          The jury was instructed on the law of parties and returned a general verdict of
guilty. 
 
ANALYSIS
          In his first and second issues, appellant contends that the evidence is legally
and factually insufficient to support his conviction because the State failed to put on
evidence that appellant participated in the aggravated robbery, or intentionally or
knowingly assisted in its commission. 
A.      Standard of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). 
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 483 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). The fact-finder alone determines what
weight to place on contradictory testimonial evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. Id. at 408–09. In conducting a
factual-sufficiency review, we must discuss the evidence that, according to appellant,
most undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003). 
B.      Aggravated Robbery
          The Penal Code provides, in pertinent part, that a person commits robbery if,
in the course of committing a theft and with intent to obtain or maintain control of
property, he intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death. Tex. Pen. Code Ann. § 29.02 (Vernon 2003). “In
the course of committing theft” means conduct that occurs in an attempt to commit,
during the commission, or in immediate flight after the attempt or commission of
theft. Id. § 29.01. A robbery becomes aggravated if, inter alia, the person uses or
exhibits a deadly weapon. Id. § 29.03(a)(2). A firearm is, per se, a deadly weapon. 
 Id. § 1.07(a)(17)(A) (Vernon Supp. 2004–2005). 
          A person is criminally responsible as a party to the offense if the offense is
committed “by his own conduct, by the conduct of another for which he is criminally
responsible, or by both.” Tex. Pen. Code Ann. § 7.01(a) (Vernon 2003). Each party
to the offense may be charged with its commission. Id. § 7.01(b). A person is
criminally responsible for the conduct of another if, acting with the intent to promote
or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid another person to commit the offense. Id. § 7.02(a)(2). Intent to assist
may be inferred from the conduct, words, and acts of the accused. Dues v. State, 634
S.W.2d 304, 305 (Tex. Crim. App. 1982). Mere presence at the scene of the offense
is not enough to make one a party, but may be sufficient, when taken with other
evidence, to show that he was a participant. Wygal v. State, 555 S.W.2d 465, 469 n.3
(Tex. Crim. App. 1977). The fact-finder may consider events occurring before,
during, and after the commission of the offense in determining whether a person is
a party. Id. at 468–69; Diaz v. State, 902 S.W.2d 149, 151–52 (Tex. App.—Houston
[1st Dist.] 1995, no pet.). 
C.      Legal Sufficiency
          In his first issue, appellant contends that the evidence is legally insufficient to
support his conviction because the State failed to show that he participated in the
aggravated robbery, or intentionally or knowingly assisted in its commission. 
Specifically, appellant argues that he had no knowledge that a robbery was taking
place, so he could not have acted with intent to assist. 
          First, the State offered evidence of the commission of an aggravated robbery
by the primary actors. The evidence shows that two men, carrying guns and large
bags, entered the pawnshop wearing masks, hoods, and gloves. One of the men held
Fuentes, the manager of the store, at gunpoint and forced her to empty cash-register
drawers and the contents of a safe into his bag. The other man held Ramos, a clerk,
at gunpoint and forced him to empty jewelry cases into his bag. Fuentes and Ramos
testified that they were in fear and thought they were going to die. The men left with
approximately $10,000 cash and $50,000 worth of jewelry. 
          Then, the State offered evidence that appellant specifically intended to assist
and did assist in the commission of the offense. The testimony shows that the men
got away in a green Nissan Sentra that had been waiting in the parking lot. Ramos
testified that, when the gunmen ran from the store, he saw a green car back up rapidly
to meet them, then slow long enough to allow the men to jump into the car. Allen,
a customer who came into the store during the commission of the robbery, testified
that, as he was walking in, he had seen a green car in front of the store with a towel
over its rear license plate. Allen had noticed that the engine was running, and that a
person was sitting in the driver’s seat. Deputy Green also testified that, as he
approached the pawnshop, he saw a green car backing up rapidly in the parking lot
with a towel over its license plate. He then saw a man with a duffel bag and a gun run
to the car. The car slowed, allowed the man to jump in, and then sped forward out of
the parking lot. 
          Green testified that he pursued the car at 60 miles per hour, which was almost
twice the speed limit of the area. The car stopped only briefly at a red light and then
made a left turn from the extreme right lane. The driver lost control, however, and
crashed into a light pole. Green parked in front of the wrecked car and saw that the
front license plate was also covered with a towel. Green identified appellant as the
driver of the car from a photograph and in court during trial.
          The jury could have reasonably concluded that appellant had knowledge of the
plan to commit the aggravated robbery because of the preparatory steps taken to
conceal the identity of the car and the gunmen. The evidence shows that both the
front and rear license plates of the car were covered with towels. In addition, the
evidence shows that the complainant, Fuentes, pushed the silent alarm that summoned
Deputy Green because she initially saw a man with a gun walking around outside the
front of the store wearing a black hood, mask, and gloves. Because these items were
put on in advance, outside the front of the store, the jury could have reasoned that at
least one gunman donned his disguise while he was still with, or in close proximity
to, appellant. In addition, both men carried guns and large bags. The jury could have
reasoned that appellant must have known that these items were in the car and must
have seen his co-defendants get out of the car with them. Hence, the jury could have
reasonably concluded that appellant knew that a robbery was about to occur. 
          In addition, the jury could have reasonably concluded that appellant drove his
co-defendants to the pawnshop for the purpose of assisting them in committing the
robbery. Even though appellant never entered the store, he demonstrated his intent
to assist in the aggravated robbery by waiting in the driver’s seat of the car with the
engine running to provide an escape vehicle. See Hefley v. State, 489 S.W.2d 115,
116–17 (Tex. Crim. App. 1973) (finding evidence sufficient to convict appellant as
party to aggravated robbery when appellant waited in truck with engine running while
co-defendant robbed liquor store at gunpoint). This conclusion is supported by the
testimony of Ramos and Green, who saw appellant rapidly backing the car toward his
co-defendants when they emerged from the store. Clearly, appellant intended to
promote a quick escape. Further, even if appellant had been wholly unaware of his
co-defendants intentions when they went into the store, the jury could have
reasonably concluded that appellant knew that a robbery had taken place when his co-defendants came running from the store wearing masks and hoods, and carrying guns
and bags—one with jewelry falling out through a hole. 
          Further, the jury could have reasonably concluded that appellant acted to assist
in the commission of the robbery by evading police and providing a swift getaway.
The testimony shows that police immediately began chasing appellant as he drove out
of the parking lot, yet appellant continued to attempt to speed away at a rate of nearly
twice the speed limit in the area and paused only briefly at a red light before
attempting to turn left through the intersection from the extreme right lane and
crashing. See Thompson v. State, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985)
(holding that evidence that defendant drove getaway car is sufficient to convict as
party to robbery); Johnson v. State, 6 S.W.3d 709, 711 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d) (finding sufficient evidence of intent to assist aggravated
robbery when appellant, who did not enter store, drove car seen leaving store after
robbery, attempted to outrun police, and was later apprehended with two men
identified as robbers).
          Viewing the evidence in the light most favorable to the verdict, we hold that
a rational trier of fact could have found beyond a reasonable doubt all the essential
elements of aggravated robbery and appellant’s guilt as a party to the offense. See
Johnson, 23 S.W.3d at 7.
          We overrule appellant’s first issue.
D.      Factual Sufficiency 
          In his second issue, appellant contends that the evidence is factually
insufficient to support his conviction because the State failed to show that he
participated in the robbery or intentionally assisted in its commission. Specifically,
appellant argues that he had no knowledge that a robbery was taking place, so he
could not have acted with intent to assist. 
          As discussed above, the State provided evidence that an aggravated robbery
occurred and that appellant intentionally assisted in its commission by driving the
getaway car.
          The defense put on appellant’s co-defendants, Felder and McShan. Both
testified that appellant was asleep during the planning of the robbery and that
appellant did not know that a robbery was being committed inside the pawnshop. 
Felder and McShan testified that appellant only sped away because they ran to the car
saying, “Come on, man. Drive, drive, drive.”
          As the determiner of the credibility of the witnesses, the fact-finder may choose
to believe all, some, or none of the testimony presented. See Cain, 958 S.W.2d at
407; McKinny v. State, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.]
2002, no pet.). We hold that the jury’s verdict that appellant assisted in the
commission of the robbery is not irrational, or clearly wrong and manifestly unjust,
or that the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met. See Escamilla, 143 S.W.3d at 817.
          We overrule appellant’s second issue.
 
 
 
Conclusion
We affirm the judgment of the trial court. 
 


                                                   Laura Carter Higley
                                                   Justice
Panel consists of Justices Taft, Alcala, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).