**Affirmed and Memorandum Opinion filed November 22, 2016.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-15-00612-CR

### QUINTON  SHANDRA  JONES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 74300**

## M E M O R A N D U M    O P I N I O N

After a bench trial, the court found appellant guilty of possession of a controlled substance and sentenced him to nine years' confinement.  In four issues, appellant challenges the sufficiency of the evidence and the trial court's denial of a motion to suppress.  We affirm.

# I. SUFFICIENCY OF THE EVIDENCE

In his fourth issue, appellant contends the evidence is legally insufficient to support his conviction because the trial court was not rationally justified in finding beyond a reasonable doubt that appellant possessed a controlled substance.

## A. Standard of Review

When reviewing the sufficiency of the evidence after a bench trial, we apply the same *Jackson v. Virginia* standard that is applied in an appeal from a jury trial. *See Robinson v. State*, 466 S.W.3d 166, 173 (Tex. Crim. App. 2015) (citing *Jackson v. Virginia*, 443 U.S. 307, 309, 319 (1979)). Under this standard, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a fact finder was rationally justified in finding guilt beyond a reasonable doubt. *Tate v. State*, No. PD-0730-15, — S.W.3d —, 2016 WL 5113495, at *2 (Tex. Crim. App. Sept. 21, 2016) (citing *Jackson*, 443 U.S. at 318–19). The State need not disprove every conceivable alternative to a defendant's guilt. *Id.* Direct evidence and circumstantial evidence are equally probative. *Id.*

The trial court is the sole judge of credibility and weight to be attached to the testimony of witnesses, and the court may draw multiple reasonable inferences from the facts so long as each is supported by the evidence. *Id.* The trial court may not, however, draw conclusions based on speculation. *Id.* Speculation occurs when the inference is insufficiently based on the evidence to support a finding beyond a reasonable doubt. *Id.* When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the verdict. *Id.*

The trial court is free to believe or disbelieve all or part of a witness's testimony. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Hernandez v. State*, 161 S.W.3d 491, 501 (Tex. Crim. App. 2005) (noting that a fact finder may disbelieve some or all of a witness's testimony even when that testimony is not contradicted).

## B.    The Evidence

Three witnesses testified at trial: (1) the arresting police officer, Mike Glaspie; (2) the State's chemist; and (3) a passenger in appellant's car, Tahika Johnican.

### 1.  The State's Witnesses

Officer Glaspie testified that he saw a car leaving a house where methamphetamine is sold. He followed the car and stopped the driver for a perceived traffic violation and to determine whether the driver was intoxicated. Appellant was the driver. There were three passengers: (1) Margaret Nichols in the front; (2) Jimmy Garcia in the rear on the driver side; and (3) Johnican in the rear on the passenger side. The stop was recorded on Officer Glaspie's dash camera, and the trial court admitted the video into evidence.

Officer Glaspie conducted an HGN test on appellant and did not believe appellant was impaired. Glaspie's dispatch informed him that there was an arrest warrant for Garcia. After another officer arrived on the scene for backup, Glaspie and the officer arrested Garcia. Glaspie testified that while appellant was out of the car during the traffic stop for about thirty minutes, Glaspie could not see what was happening inside the car where the passengers had remained.

Glaspie asked appellant if Glaspie could search appellant's car. Appellant consented. Glaspie removed Nichols and Johnican from the car, and Glaspie

3

searched it. He found two Crown Royal bags on the floorboard near the front passenger seat where Nichols had been sitting. Inside each bag, Glaspie found a pipe commonly used to smoke methamphetamine, crack cocaine, or marijuana. Glaspie found 3.8 grams of methamphetamine in one of the pipes. Glaspie also found a prescription bottle with assorted pills inside a purse near the front passenger seat.

Inside the center console arm rest between the front driver and passenger seats, Glaspie found three bags containing a crystalized substance. The State's chemist testified that the bags contained 1.5556 grams of methamphetamine.

### 2. *Johnican's Testimony*

Johnican testified for the defense. She testified that she, Nichols, and appellant lived together. Nichols and appellant were dating. Johnican knew Nichols was a "meth dealer." Nichols had sold methamphetamine at their house in front of appellant.

On the night of the arrest, appellant was driving the group in a rental car. Nichols told appellant that they needed to go to West Columbia to "pick up some money," which Johnican understood to mean that Nichols was going to sell some methamphetamine. When asked at trial whether appellant would have known "what was going on," Johnican testified, "Right."

Before the arrest, everyone had gone into the "nasty" house that they had stopped at for Nichols to sell methamphetamine. But the sale did not occur. After they left the house, appellant was upset with Nichols because Nichols did not get money and they had detoured for nothing.

Johnican testified that she did not see appellant with any drugs that night, and appellant never looked in the center console. Johnican testified that Nichols

4

had drugs on her. Nichols told Johnican that Nichols had "two sacks" of methamphetamine.

Johnican testified that during the traffic stop Nichols reached across the driver seat into the driver side door pocket. Then Nichols opened the center console and closed it, but Johnican did not see Nichols put anything inside. Johnican also testified that Nichols said Nichols put methamphetamine in the center console.

## C. Legal Principles

The trial court found appellant guilty of knowingly or intentionally possessing a controlled substance—methamphetamine weighing at least one gram but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(a), (c). To prove the requisite intent, the State had to prove that appellant (1) exercised control, management, or care over the substance in question and (2) knew that the substance was contraband. *See id.* § 481.002(38) (defining possession); *see also Tate*, 2016 WL 5113495, at *2; *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988).

A defendant's mere presence is insufficient to establish possession. *Tate*, 2016 WL 5113495, at *2. But, possession of contraband need not be exclusive, and the evidence may show that the defendant jointly possessed the contraband. *Martin*, 753 S.W.2d at 386. If contraband is not in the exclusive possession of the defendant, a fact finder may infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an interference. *Tate*, 2016 WL 5113495, at *2. A non-exclusive list of factors that may link the defendant to the knowing possession of contraband include:

5

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at \*3. The purpose of linking the defendant to the contraband is to prevent an innocent bystander such as a friend or relative from conviction "merely because of his fortuitous proximity to someone else's drugs." *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). Although these factors are helpful, the ultimate inquiry remains: "Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 2016 WL 5113495, at \*3 (citing *Jackson*, 443 U.S. 307, 318–19).

Furthermore, in a bench trial, the trial court may consider the law of parties. *Diaz v. State*, 902 S.W.2d 149, 151 (Tex. App.—Houston [1st Dist.] 1995, no pet.); *see also Leon v. State*, 102 S.W.3d 776, 781–82 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that the evidence from a bench trial was sufficient based on the law of parties). A person is criminally responsible as a party to an offense if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid another person to commit the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing Tex. Penal Code Ann. § 7.02). "Thus, to prove possession of a controlled substance as a

party, the State must show (1) that another person possessed the contraband and (2) that the defendant, with the intent that the offense be committed, solicited, encouraged, directed, aided, or attempted to aid the other's possession." *Robinson v. State*, 174 S.W.3d 320, 324–25 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also Martin*, 753 S.W.2d at 386–87 (reviewing the sufficiency of the evidence for possession of methamphetamine under a law-of-parties theory).

**D.    Analysis**

After reviewing the entire record and relevant authorities, we hold that the evidence is legally sufficient to support appellant's conviction for possession as a principal and a party.

Of the potential links identified above, the most probative of appellant's guilt are the third and eleventh. Although the contraband was not in plain view, appellant was in close proximity and had convenient access to the methamphetamine found in the center console of the car; and as the renter of the car, he had the right to possess the place where the drugs were found. *Compare Tate*, 2016 WL 5113495, at *6 (sufficient evidence to support the driver's conviction when the drugs were found in a syringe in plain view in a compartment underneath the air conditioner controls between the driver and front-seat passenger), *with Roberson v. State*, 80 S.W.3d 730, 734, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (insufficient evidence to support the driver's conviction as a principal or party when the drugs were found on the floorboard of the passenger side of the car and outside the car on the passenger side).

Further, Johnican's testimony that Nichols felt inside the driver side door pocket before putting methamphetamine in the center console would enable the trial court to rationally infer that Nichols moved the methamphetamine from the driver side door pocket and placed it in the center console. *See Tate*, 2016 WL

7

5113495, at *2 (fact finder may draw reasonable inferences from the evidence). The driver-side door was a location for which appellant had the closest proximity and greatest accessibility among all of the car's occupants.

Considering the totality of the evidence, the trial court rationally could have found beyond a reasonable doubt that appellant (1) exercised control, management, or care over the methamphetamine and (2) knew that the substance was contraband. *See Tate*, 2016 WL 5113495, at *2

The trial court also could have credited Johnican's testimony that (1) Nichols asked appellant to drive Nichols to the house so she could get some money, (2) appellant knew that Nichols had sold methamphetamine, and (3) appellant knew "what was going on"—that Nichols intended to sell methamphetamine at the house. From this evidence, the trial court rationally could have found that appellant knew Nichols was possessing cocaine. And, from the evidence that appellant drove Nichols to a drug house where appellant knew Nichols intended to sell methamphetamine, the trial court rationally could have found that appellant (1) intended to promote or assist Nichols in her possession of the methamphetamine and (2) aided Nichols in her possession of the methamphetamine. *Cf. Woods v. State*, 998 S.W.2d 633, 634–36 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (sufficient evidence to support conviction as a party to possession of cocaine when the defendant arranged the meeting between the informant and the person who sold the cocaine to the informant, and the defendant was present during the sale and transfer of the cocaine).

Considering all of the admitted evidence, we conclude the evidence is legally sufficient to support appellant's conviction. Appellant's fourth issue is overruled.

## II.   MOTION TO SUPPRESS

In his first issue, appellant contends the trial court erred by denying his motion to suppress because Officer Glaspie lacked reasonable suspicion to stop the car. In his second issue, appellant contends the trial court erred similarly because the stop was unreasonably prolonged past the time necessary to satisfy the purpose of the stop. After reciting general Fourth Amendment principles and the standard of review, we address each of appellant's contentions.

### A.   General Fourth Amendment Principles

The Fourth Amendment protects the right of people to be free from "unreasonable searches and seizures." U.S. Const. amend IV. Whether a particular search or seizure is reasonable is measured in objective terms by examining the totality of the circumstances. *See Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). We apply the familiar rationale from *Terry v. Ohio* when determining the reasonableness of a traffic stop. *See St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). Under *Terry*, an investigative detention must be (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances that justified the interference in the first place." *Id.*

Under the first inquiry, the detention is justified when the officer has reasonable suspicion of criminal activity. *See Furr v. State*, No. PD-0212-15, — S.W.3d —, 2016 WL 5118607, at *3 (Tex. Crim. App. Sept. 21, 2016). "Reasonable suspicion to detain a person exists when a police officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* at *4 (quotation omitted).

Under the second inquiry, "the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe*, 152 S.W.3d at 63. "In other words, once the purpose for the stop is exhausted, police may not *unnecessarily* detain drivers solely in hopes of finding evidence of some other crime." *Id.* at 64. Unless officers develop reasonable suspicion to continue the detention, the detention becomes unreasonable. *See St. George*, 237 S.W.3d at 727; *see also Simpson v. State*, 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("[O]nce the purpose of the original detention has been effectuated, any continued detention must be supported by some additional reasonable suspicion, that is, something out of the ordinary that is occurring and some indication that the unusual circumstance is related to crime.").

## B. Standard of Review

"We review a trial court's denial of a motion to suppress for an abuse of discretion and apply a bifurcated standard of review, affording almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor." *Furr*, 2016 WL 5118607, at *3. "When the trial court does not make express findings of fact, as in this case, we view the evidence in the light most favorable to the trial court's ruling and will assume [the trial court] made findings that are consistent with its ruling and that are supported by the record." *Id.* "Thus, the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

We review de novo "whether the facts are sufficient to give rise to reasonable suspicion in a given case." *Furr*, 2016 WL 5118607, at *3. And, we review de novo whether a particular seizure was reasonable under the Fourth

Amendment. *Kothe*, 152 S.W.3d at 62. If the trial court's ruling is correct under any theory of law applicable to the case, we will affirm. *See Furr*, 2016 WL 5118607, at *3.

## C. Reasonableness of the Initial Detention

In his first issue, appellant contends the trial court erred because Officer Glaspie lacked reasonable suspicion to stop the driver of the car for a traffic violation or apparent intoxication. We hold that the trial court rationally concluded Glaspie had reasonable suspicion to stop the car to investigate whether appellant was intoxicated.

Officer Glaspie testified that he observed the car leaving a house where methamphetamines were sold. He saw the car "swerving in his lane of traffic." Then, Glaspie observed the car cross a "white line onto the shoulder of the road." He testified that the car's passenger-side tires crossed the white line. State's Exhibit 1, the recorded video, begins thirty seconds before the stop. It shows appellant's car traveling in the right of two lanes on one side of a divided roadway. The car immediately drifts to the right solid white line and touches the line or comes very close to it. About ten seconds later, the car moves to the left side of the lane and touches or comes very close to the striped line. About ten seconds later, the car moves again to the right side of the lane, and the passenger-side tires cross the solid white line.

Glaspie observed the car's "erratic driving" at about 2:25 a.m., and he testified that he normally encounters intoxicated drivers after midnight. When Glaspie observed the car swerve within its lane and cross the white line, he "stopped the vehicle and started a DWI investigation." The erratic driving made him concerned that the driver was intoxicated or otherwise impaired.

11

The possibility of an innocent explanation for unusual driving behavior does not deprive an officer from having reasonable suspicion to investigate the possibility of criminal conduct, such as intoxicated driving. *See Leming v. State*, 493 S.W.3d 552, 564–65 (Tex. Crim. App. 2016). "Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal." *Id.* at 565 (quotation omitted).

Under our de novo review, we hold that the evidence recited above is sufficient to give rise to Glaspie's reasonable suspicion that appellant was driving while intoxicated or impaired, justifying a temporary investigative detention. *See id.* at 564 (holding that the officer had reasonable suspicion to investigate potential intoxication when the vehicle drifted back and forth within its lane below the posted speed limit; agreeing with the trial court's characterization of the driving as "erratic"); *Miller v. State*, 418 S.W.3d 692, 694, 697–98 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding that the officer had reasonable suspicion to investigate potential intoxication when the vehicle "straddled" the line dividing two lanes for a few seconds); *see also Curtis v. State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (holding that officers had reasonable suspicion when the defendant's car weaved "in and out of its lane several times, over a short distance, late at night").

Appellant's first issue is overruled.

## D. Scope of the Detention

In his second issue, appellant contends the traffic stop was unreasonably prolonged past the time necessary to satisfy the purpose of the stop. In particular, appellant contends the purpose of the stop ended (1) at the earliest when Officer Glaspie finished the HGN test, (2) when "the warrant checks returned" about twenty-five minutes into the stop and did not indicate appellant had a warrant, or

(3) at the latest when Garcia was arrested. Appellant consented to the search of the car after these incidents, so appellant argues that his consent was the product an illegal detention.

First, we review the evidence concerning the scope of the detention. Deferring to the trial court's implied findings that are supported by the record, we hold that appellant was not illegally detained at the conclusion of the HGN test. Further, appellant has not preserved error for his contentions that the stop became unlawful after the warrant checks or Garcia's arrest.

## 1. The Evidence

Viewing Glaspie's testimony together with State's Exhibit 1, the video recording of the stop, in the light most favorable to the trial court's ruling, the following events occurred with approximate timestamps from the video:

| | |
|---|---|
| 00:26 | Glaspie activated his car's lights to initiate a traffic stop. |
| 00:56 | Glaspie's car came to a stop behind appellant's car. |
| 02:09 | Glaspie approached appellant's car and asked appellant for his license and insurance. |
| 02:24 – 05:12 | Glaspie collected identifications from appellant, Garcia, and Johnican. Nichols said she did not have hers. Glaspie told appellant he stopped appellant because appellant was swerving. Glaspie returned to his car. |
| 05:30 – 06:36 | Glaspie read three license numbers to dispatch. Glaspie asked dispatch to "check them through Angleton, Brazoria County, Clute, Freeport, Lake Jackson, and Brazoria PD."[1] |
| 14:20 – 15:30 | Dispatch and Glaspie had a conversation, though dispatch is mostly unintelligible on the recording. Glaspie said, "Yeah," "what," "ok," and "nothing else on the other ones yet?" |
| 15:50 | Glaspie backed up his car so he could have more room to do a field sobriety test. |

[1] On appeal, the parties agree that Glaspie was requesting warrant checks.

13

| 16:30 – 18:30 | Glaspie approached appellant and asked him to step out of the car and walk between the cars. Glaspie asked appellant if he had anything to drink and asked why appellant seemed confused in the car. They discussed appellant's driving history that day. Glaspie patted appellant's pockets. Glaspie told appellant that Glaspie thought appellant and the passengers were intoxicated. Glaspie asked to conduct a field sobriety test, and appellant agreed. |
|---|---|
| 18:30 – 18:40 | Glaspie told dispatch, "I'll be performing FST [unintelligible] driver. It'll be the first individual I had you run." |
| 18:45 – 20:55 | Glaspie performed the HGN test. Glaspie told appellant, "You got a little bit, but that can be caused from fatigue, too . . . staring at the highway too long." Glaspie told appellant that being a fatigued driver is "a little bit worse" and "almost as bad as being a drunk driver." |
| 20:55 – 22:05 | Glaspied asked appellant who the girl was in the front seat. Appellant told him it was Margaret Nichols. Glaspie told appellant to "hang tight" while Glaspie went back to Nichols to confirm her name and date of birth. Glaspie told Nichols to "hang tight," and he returned to his car. |
| 22:05 – 22:30 | Glaspie gave Nichols's information and description to dispatch. |
| 24:30 – 26:10 | Dispatch informed Glaspie that Garcia was "99," and Glaspie asked, "What are the warrants for?" Dispatch responded, "Assault with deadly weapon, used a .38 caliber revolver, aggravated assault and parole violation." Glaspie asked for a "county unit." Glaspie asked for "confirmation on those hits," and dispatch responded that they were "good warrants." |
| 31:35 – 32:20 | Glaspie asked dispatch for the "ETA on BCSO." Dispatch said a unit was on its way. |
| 33:05 –35:45 | The back-up deputy arrived and spoke with Glaspie. They arrested Garcia and placed him in Glaspie's car. |
| 35:50 – 36:00 | Glaspie, pointing toward appellant and appellant's car, told the male deputy, "She's checking him and the two girls all the way around."[2] |

---

[2] Throughout the stop, the dispatch's voice sounded female. Thus, it would be reasonable for the trial court to find that Glaspie was referring to the dispatch "checking" appellant for

14

| 36:10 – 37:45 | Glaspie told appellant that Garcia was arrested for a warrant and was going back to prison. Glaspie returned to appellant's car and asked Nichols and Johnican if they had anything else in the car. Glaspie collected Garcia's knife and phone. Glaspie said, "So nobody in here drinks? So he's the only one who drinks, huh?" Nichols and Johnican talked over each other and the answers are not intelligible on the recording. |
| --- | --- |
| 37:50 – 38:00 | Glaspie returned to his car and asked Garcia if "this" was Garcia's phone. |
| 38:51 – 39:17 | Glaspie spoke with dispatch and asked, "Are they all clear?" Dispatch cannot be heard on the recording. |
| 39:36 – 39:50 | Glaspie asked appellant whether he or his passengers had anything in the car that they should not have. Appellant said, "No," and, "I hope not." Glaspie asked for consent to search the car, and appellant consented. |

Glaspie searched the car and arrested appellant and Nichols about five minutes later.

Glaspie testified during the suppression hearing that when he stopped the car, he "started a DWI investigation." From his initial encounter with appellant, Glaspie thought appellant was "impaired on a substance" or "trying to hide something." On cross-examination, Glaspie answered "correct" to the following questions: (1) "[T]he initial stop was because you believe that the driver of the vehicle was impaired in some manner," and (2) "So would it be reasonable to say that after you did the HGN that you did not believe [appellant] to be impaired?"

## 2. *No Illegal Detention at the Conclusion of the HGN Test*

Appellant contends the traffic stop was unlawfully prolonged past the time necessary to effect the purpose of the stop because Officer Glaspie determined that appellant was not impaired at the conclusion of the HGN test.

---

warrants. *See Garcia-Cantu*, 253 S.W.3d at 241 (reasonable inferences are drawn in favor of the trial court's ruling).

Citing a Fifth Circuit case, appellant "concedes that case law establishes that an officer may wait a reasonable amount of time for computer checks of warrants to be completed, even if that time was longer than reasonably necessary to administer the HGN test." Indeed, in *Kothe v. State*, the Court of Criminal Appeals held that an officer did not unduly prolong a traffic stop after concluding that the defendant was not intoxicated when the officer waited up to twelve minutes for the results of a warrant check. *See* 152 S.W.3d at 57, 65–66.

"On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information." *Id.* at 63. Checking the driver for warrants is part of a routine traffic stop. *See id.*

The video recording reveals that Officer Glaspie requested a warrant check on appellant before conducting the HGN test. *See id.* at 66 (reasoning that because the officer initiated the warrant check before concluding the driver was not impaired, the officer was not "using the warrant check solely as a means to purposely extend the detention"). After the officers arrested Garcia, but before appellant consented to the search, Officer Glaspie told the deputy that dispatch was still "checking him . . . all the way around" while pointing toward appellant. After this statement, Glaspie asked dispatch, "Are they all clear," which the trial court could have found was a reference to the warrant check on appellant. Glaspie did not testify at the suppression hearing that the warrant check on appellant was completed at any particular time. Thus, based on this record, the trial court

16

rationally could have found that the warrant check on appellant had not been completed before the conclusion of the HGN test.[3]

Under these circumstances, the trial court did not abuse its discretion by denying appellant's request to suppress all evidence recovered after the HGN test. *See id.* at 65–66.

### 3. Other Arguments Not Preserved

On appeal, appellant alternatively argues that he was illegally detained (1) when the "warrant check was complete" and Officer Glaspie discovered that appellant "did not himself have a warrant" because it was not reasonable to detain appellant "so that Glaspie would have backup to arrest the passenger,"[4] or (2) "as soon as the passenger was arrested." These arguments are not preserved.

"To preserve an issue for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Penton v. State*, 489 S.W.3d 578, 580 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing Tex. R. App. P. 33.1(a)). "The appellate complaint must comport with the specific complaint that appellant timely lodges in the trial court." *Id.* (citing *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)). "The complaining party must have clearly conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as the underlying rationale." *Pabst v. State*, 466 S.W.3d 902, 907 (Tex.

---

[3] Appellant has not argued on appeal or at trial that the warrant check took too long or unnecessarily prolonged the traffic stop. *See Kothe*, 152 S.W.3d at 65 ("Only if a license check 'unduly prolongs' the detention is the officer's action unreasonable under the circumstances.").

[4] Appellant's argument rests upon his assumption that the warrant check on appellant was "complete" about twenty-five minutes into the stop because that is when the warrant for Garcia was discovered. As discussed above, however, using the proper standard of review, we must credit the evidence that the warrant check on appellant had not been completed until after Garcia's arrest.

17

App.—Houston [14th Dist.] 2015, no pet.) (citing *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009)).

Although a party need not use specific or technical words, the party must "let the trial court know what he wants and why he feels himself entitled to it clearly enough for the judge to understand him." *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016). "[A] general or imprecise objection will not preserve error for appeal unless 'the legal basis for the objection is *obvious* to the court and to opposing counsel.'" *Id.* (quoting *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006)).

We look to the context of the complaint, and "when the context shows that a party failed to effectively communicate his argument, then the error will be deemed forfeited on appeal." *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). "[A] complaint that could, in isolation, be read to express more than one legal argument will generally not preserve all potentially relevant arguments for appeal." *Id.* at 314.

At the suppression hearing, appellant was emphatic that the traffic stop should have ended at the conclusion of the HGN test, not at some later time. He argued as follows:

> Once he—the officer conducted the field sobriety tests, the HGN, he decided according to his testimony that Mr. Jones was not impaired. At that point in time the reason for his stop ended. So my argument is from that point on nothing can be admitted that was recovered after that time.
>
> . . . .
>
> But if you decide that [the initial stop] was satisfactory I think certainly the evidence on the video and Officer Glaspie's testimony shows that once he got Mr. Jones out of the car, performed the HGN, talked to him a little bit, he decided he was not impaired. The reason for that stop was over at that point in time. He should have let Mr.

> Jones head out at that point in time. . . . So again, my argument is that at that point in time the reason for the stop was over with and anything after that is going to be bad.

Appellant did not mention the warrant check or the extension of the stop due to the arrest of Garcia. In response, the State argued that extending appellant's detention was reasonable because Officer Glaspie "had to wait for backup to retrieve this person who had a warrant," and only two or three minutes passed between the arrest and Officer Glaspie's request for consent to search the car.

In rebuttal, appellant did not waver in his position. He did not mention the warrant check or arrest of Garcia. Instead, he argued, "Once the officer decided that there was no reason to arrest or further investigate Mr. Jones for DWI, the stop or reason for the stop ended right there." After appellant's rebuttal, the trial court asked the State to respond to appellant's contention: "Address the second point, [prosecutor], about—as I gathered from the testimony what [defense counsel] said, he did the HGN and determined that he didn't think he was impaired. Why wouldn't the reason for the stop as it applies to the Defendant stop at that time?"

Based on appellant's arguments and the trial court's question, we conclude that appellant did not provide the trial court with the "precise and proper application of law as well as the underlying rationale" now asserted on appeal. *See Pabst*, 466 S.W.3d at 907 (holding that a complaint at trial that a stop was illegal because the defendant had not committed a crime was insufficient to preserve the argument on appeal that a stop was illegal because of its length). The only legal basis for appellant's objection that would have been "obvious" to the trial court was that the stop should have ended at the conclusion of the HGN test. *See Vasquez*, 483 S.W.3d at 554.

The additional arguments appellant makes on appeal that he did not make to the trial court are not preserved, and so we do not address the merits of them. Appellant has forfeited these complaints.

Appellant's second issue is overruled.

## III. CONCLUSION

Having overruled all of appellant's issues necessary to the disposition of this appeal, we affirm the trial court's judgment.[5]

/s/     Sharon McCally
        Justice

Panel consists of Chief Justice Frost and Justices McCally and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[5] We do not reach appellant's third issue concerning the sufficiency of the evidence "after excluding the suppressible evidence" because it is premised on a successful challenge to the trial court's denial of the motion to suppress. *See* Tex. R. App. P. 47.1.