Memorandum Opinion filed January 13 2011 Withdrawn; Affirmed and Corrected
Memorandum Opinion filed February 3, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00749-CR

___________________

 

Cornelius Conway, Appellant

 

V.

 

THE State of Texas, Appellee



 



 

On
Appeal from the 185th District Court

Harris County,
Texas



Trial Court Cause No. 1144821

 



 

 

CORRECTED MEMORANDUM OPINION

The court
withdraws its opinion of January 13, 2011 and issues this corrected memorandum
opinion in its place.  

A jury found
appellant Cornelius Conway guilty of capital murder and the trial court
sentenced him to life imprisonment.  Conway appeals his conviction contending
that: (1) the evidence at trial is legally insufficient to support a guilty
verdict; (2) the evidence at trial is factually insufficient to support a
guilty verdict, and (3) the trial court erroneously admitted an overly
prejudicial photograph over trial counsel’s objection.  We affirm.  

I

Cornelius Conway was convicted of capital murder for
his role in an armed robbery in which Carltrell Odom, an off-duty Harris County
deputy constable, was shot and killed.  At about nine o’clock on the evening of
November 29, 2007, Odom was standing in the parking lot of the apartment
complex where he lived talking with two other residents, Raul Duran and Jorge
Lemus.  The three men had been visiting for about thirty minutes when four
African-American, teenaged males walked toward them in a single-file line.  Lemus
testified that the first teenager wore a white hoodie with camouflage patterns,
and the other three wore black hoodies.  Duran and Lemus both testified that
the teenagers encircled the three men and each drew a gun.  The teenager
wearing the white hoodie directed the three men to get down, proclaiming, “This
is a fucking robbery.”  Both Lemus and Duran got down on the ground and
testified they could feel guns pressed against their heads.  They gave the four
males everything in their pockets, including Duran’s cell phone.    

Lemus stated that he witnessed Odom start to get down
on the ground, but after being struck several times with a gun, Odom stood up
and stated, “You cannot treat me like this.”  Lemus testified that Odom began
to argue with the teenager in the white hoodie, who then pointed his gun at Odom.
 Odom hit his assailant’s hand, turned around, and began to run.  Lemus stated
that he heard a gunshot fired in Odom’s direction.  The assailant then chased Odom
and fired another shot causing Odom to fall to the ground.  Lemus testified
that the assailant who shot Odom walked over to his body, stood over it, and
shot Odom once more in the back of the head.  Albert Chu, assistant medical examiner,
performed the autopsy on Odom's body and testified that either shot could have
caused his death.  After the third shot was fired, the four robbers jumped into
a black Infiniti sedan and drove out of the apartment complex.

After the shooting, several Houston Police Department
(“HPD”) officers arrived on the scene, including Sergeant Tony Huynh.  Sergeant
Huynh testified that when he discovered Duran's cell phone was stolen, he
contacted a special agent with the U.S. Marshal’s office, who helped him track
or “ping” the cell phone to find its location.  Sergeant Huynh stated that he
followed the agent in an unmarked vehicle to 4839 Redbud.  After arriving at
the address, Sergeant Huynh, HPD Sergeant Mark Newcomb, and two uniformed
officers knocked on the front door and asked if a young male lived at the
home.  Loveless Nickerson, mother of Alan Michal Nickerson, answered, “Yes,”
and gave the officers permission to enter the home and speak with her son.  

Once in the home, Sergeant Newcomb found Nickerson,
who appeared to be sleeping, along with Duran’s cell phone and a multicolored
camouflage hoodie.  The officers asked Nickerson if he was willing to accompany
them to the police station.  Nickerson agreed and gave a voluntary statement in
which he confessed he was involved in the robbery as the getaway driver.  After
being taken into custody and giving police four different statements about the
robbery-murder, Nickerson admitted he was the robber who wore the white and
camouflaged hoodie and that he shot Odom.  He also identified Conway, Damian
Edwards, Christopher Crenshaw, and Wallace Hightower as fellow participants in
the robbery-murder.  Nickerson directed officers to Crenshaw’s residence, where
Crenshaw’s mother consented to a search.  In the home, police discovered a
five-shot revolver that contained two unfired bullets and three spent cartridge
casings.  A HPD firearms examiner testified at trial that a ballistics analysis
revealed the revolver was the murder weapon.    

Conway was taken into custody on December 7, 2007,
after police obtained a warrant for his arrest.  While in custody, Conway gave
two separate interviews—one on video and another on audio only. Sergeant
Newcomb testified that in these statements Conway admitted “[h]is job was to
stand over the individuals after they were being placed down on the ground so
that they wouldn’t get back up” and “[t]o maintain control over the
individuals, the complainant’s [sic] on the ground.”  Conway denied ever
displaying a gun during the robbery-murder.  Although it was not contested at
trial that Nickerson fired the shots that killed Odom, Conway was charged and
convicted of capital murder as a party to the offense.    

II

It is
unclear from the briefing submitted on Conway’s first two points of error which
arguments he wishes us to consider under a legal-sufficiency review and which
he wishes us to consider under a factual-sufficiency review; he occasionally
refers to them separately and distinctly but at other points says his arguments
apply to both standards.  However, while this appeal was pending, a majority of
the judges of the Texas Court of Criminal Appeals determined that the Jackson
v. Virginia legal-sufficiency standard is the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to prove
beyond a reasonable doubt.  Brooks v. State, 323 S.W.3d 893, 895
(Tex. Crim. App. 2010) (plurality op.) (Hervey, J., joined by Keller, P.J.,
Keasler, and Cochran, J.J.); id. at 926 (Cochran, J., concurring, joined
by Womack, J.) (same conclusion as plurality).  Accordingly, we will analyze
Conway’s factual-sufficiency issue under the Jackson v. Virginia standard. 
See id. at 912 (plurality op.); Pomier v. State, 326
S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  

Conway claims the evidence is insufficient to support
his conviction for capital murder.  Specifically he argues that (1) there was
no evidence that Nickerson—the actual shooter—acted with the specific intent
required to murder Odom; (2) there is insufficient evidence to allow a rational
jury to reach the conclusion beyond a reasonable doubt that Conway should have
reasonably anticipated the murder would occur when he participated in the
robbery; and (3) Conway’s statement to police and co-defendant accomplice-witness
Damian Edwards’ testimony at trial as to Conway’s involvement in the
robbery-murder are, standing alone, legally insufficient to support his
conviction.  

In evaluating the sufficiency of the evidence to
support a criminal conviction, we view all evidence in the light most favorable
to the verdict and determine whether a rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007); Childs v. State, 21 S.W.3d 631, 634 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d).  We give deference to “the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate
facts.”  Hooper, 214 S.W.3d at 13 (quoting Jackson, 443 U.S. at
318–19).  The jury is the exclusive judge of the credibility of the witnesses
and of the weight to be given their testimony, and it is the exclusive province
of the jury to reconcile conflicts in the evidence.  Mosley v. State,
983 S.W.2d 249, 254 (Tex. Crim. App. 1998).  Hence, we do not reevaluate the
weight and credibility of all the evidence or substitute our judgment for the
fact finder’s.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).
 Appellate courts merely ensure that the jury’s decision was rational.  Muniz
v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris v. State,
164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d).  Additionally,
we consider all of the evidence, whether admissible or inadmissible.  Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits capital murder if he intentionally
commits murder while in the course of a robbery or attempted robbery.  Tex. Penal
Code § 19.03(a)(2).  A perpetrator who participates in the robbery can be
charged with capital murder even if he does not himself perform the act if he
is “criminally responsible as a party to an offense.”  Id. §
7.01(a)–(b).  A defendant can be held criminally responsible if the offense is
committed “by his own conduct, by the conduct of another for which he is
criminally responsible, or by both.”  Id. § 7.01(a).  A person is
criminally responsible for an offense committed by the conduct of another if,
acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense. Id. § 7.02(a)(2).  Criminal responsibility can also
be established through the following:

If, in the attempt to carry out a conspiracy to commit one
felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.  

Id. § 7.02(b).  A
reviewing court may look to events before, during, and after the commission of
the offense to determine whether an individual is a party to the commission of
the offense.  See Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim.
App. 1987); Diaz v. State, 902 S.W.2d 149, 151–52 (Tex. App.—Houston
[1st Dist.] 1995, no pet.).  Mere presence at the scene of a crime by itself
will not make a person a party to the crime, but it is a circumstance tending
to prove a person is a party to the crime, and when taken with other
circumstances may be sufficient to show the same.  See Wygal v. State,
555 S.W.2d 465, 469 n.3 (Tex. Crim. App. 1977); Diaz, 902 S.W.2d at
152.   

A

Conway contends there is no evidence that Nickerson
intended to kill Odom or that Conway could have reasonably anticipated
Nickerson’s actions.  We disagree.  Upon accosting the group of victims,
Nickerson proclaimed, “This is a fucking robbery,” brandished a handgun, and
ordered the group to get on the ground.  Co-accomplice Edwards testified that
Nickerson shot at Odom three times, hitting him twice.  Lemus, one of the
robbery victims, testified that the robber wearing the multicolored camouflage
hoodie shot twice at Odom, bringing him to the ground after the second shot. 
Lemus then testified as follows:  “So the shooter just — after the second shot
on his body, he fell down.  The shooter just went and stood next to him and
proceeded — and he shot one more shot on his head.”  A multicolored camouflage
hoodie was later seized at Nickerson’s residence, and Sergeant Newcomb also
testified that Nickerson confessed he shot Odom.  The testifying medical
examiner’s interpretation of the autopsy report corroborated these witness
accounts by revealing bullet entry points in Odom’s back and the back of his
head.  The location of the gunshot wounds, combined with testimony as to the
circumstances under which Odom was shot, give rise to a rational inference that
Nickerson acted with specific intent to kill.  See Godsey v. State, 719
S.W.2d 578, 580–81 (Tex. Crim. App. 1986) (“The specific intent to kill may be
inferred from the use of a deadly weapon unless in the manner of its use it is
reasonably apparent that death or serious bodily injury could not result.”)
(citations omitted); Childs v. State, 21 S.W.3d 631, 635 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d) (“[W]here a deadly weapon is fired
at close range, and death results, the law presumes an intent to kill.”).  The
evidence is sufficient for a rational jury to conclude beyond a reasonable
doubt that Nickerson shot Odom with the specific intent required for murder.  

B

Conway’s claim that there is insufficient evidence to
show he should have reasonably anticipated the murder is also without merit. 
Although Conway denied having a gun during the robbery, both Duran and Lemus
along with co-accomplice Edwards testified that all of the robbers brandished
firearms.  It was within the jury’s province to credit Duran’s, Lemus’s, and
Edwards’s testimony as true and disregard Conway’s testimony to the contrary.  See
Mosley, 983 S.W.2d at 254–55.  Texas courts have consistently held that
when a murder occurs in the course of a conspiracy to commit robbery, all parties
to the robbery are guilty of murder.  See Green v. State, 682 S.W.2d 271,
285–86 (Tex. Crim. App. 1984); see also Ruiz v. State, 579 S.W.2d 206,
209 (Tex. Crim. App. [Panel Op.] 1979); King v. State, 502 S.W.2d 795,
797–98 (Tex. Crim. App. 1973); Naranjo v. State, 745 S.W.2d 430, 433–34
(Tex. App.—Houston [14th Dist.] 1988, no pet.); Flores v. State, 681
S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), aff'd, 690 S.W.2d
281 (Tex. Crim. App. 1985).  Conway’s participation in a robbery in which all the
perpetrators displayed firearms is sufficient evidence for a rational jury to
determine Conway reasonably should have anticipated a murder would result.  

C

Finally, Conway argues that the only evidence against
him is his own confession and Edwards’s accomplice testimony against him, and
that this evidence is insufficient to support his conviction.  His argument rests
on two separate theories.  First, he relies on Article 38.14 of the Code of
Criminal Procedure, which provides that a conviction “cannot be had upon the
testimony of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of an offense.”  Second, he argues
that Conway’s extrajudicial confession is not enough to support his conviction
because the statement must be corroborated by independent evidence tending to
establish the corpus delicti of murder and the underlying felony of robbery. 
We address these arguments in turn.   

1

Article 38.14 requires that, before a conviction may
rest upon the testimony of an accomplice witness, the accomplice’s testimony
must be corroborated by independent evidence tending to connect the accused
with the crime.  Tex. Code Crim. Proc. art. 38.14; Brown v. State, 270
S.W.3d 564, 567 (Tex. Crim. App. 2008).  The corroboration evidence, however,
need not be sufficient in itself to establish guilt, nor must it directly link
the accused to the commission of the offense.  Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997).  Conway suggests there was only “scant”
evidence to corroborate Edwards’s accomplice testimony against him.  Part of
that evidence includes Conway’s own confession to the crime.  This alone is
sufficient to uphold his conviction as it is evidence “tending to connect”
Conway with the offense as required by Article 38.14.  See Brown, 270
S.W.3d at 568 (“We have held that sufficient accomplice-witness corroboration
may be furnished by the suspicious conduct of a defendant, and under most
circumstances, an admission or confession will be sufficient to corroborate the
accomplice-witness testimony.”); Joubert v. State, 235 S.W.3d 729, 731
(Tex. Crim. App. 2007) (holding defendant’s videotaped statement admitting he participated
in the crime but was not the shooter was sufficient to tend to connect him to
the offense in order to corroborate the accomplice witness testimony as
required by Art. 38.14).  Therefore, Conway’s confession to participation in
the robbery-murder constitutes sufficient evidence “tending to connect” Conway
with the crime.  

2

Conway also argues his confession is insufficient to
support his conviction because in the context of capital murder, an
extrajudicial statement must be corroborated by independent evidence tending to
establish the corpus delicti of murder and the underlying felony, in this case,
robbery.  The common-law corpus delicti doctrine provides that a conviction
cannot be based on a confession without some corroborating evidence that a
crime, in fact, occurred.  See Bridges v. State, 362 S.W.2d 336, 337
(Tex. Crim. App. 1962); see also Gribble v. State, 808 S.W.2d 65, 70
(Tex. Crim. App. 1990) (plurality op.).  The evidence need not necessarily tie
the confessor to the crime, but must simply establish that a crime was
committed by someone.  See Fisher v. State, 851 S.W.2d 298, 302–03 (Tex.
Crim. App. 1993) (“The corpus delicti of a crime—any crime—simply consists of
the fact the crime in question has been committed by someone.”).  This requirement
assures that no person is convicted without some evidence showing that the very
crime to which he confessed was actually committed.  See Emery v. State,
881 S.W.2d 702, 705 (Tex. Crim. App. 1994).  

In this case, proof of the corpus delicti for capital
murder in the course of a robbery requires proof that both a murder and the
underlying felony offense of robbery were committed by someone.  Id.  As
such, evidence need only show that a murder and a robbery took place to which
Conway could confess, although it need not go so far as to establish Conway
actually had any connection to the crime; it is possible for a conviction to
rest on a confession alone provided the corpus delicti of the offense is proven. 
See Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996).  In this
case, there is an abundance of evidence showing both a robbery and a murder
took place, including Odom’s body, testimony from victims Duran and Lemus that
they were robbed at gunpoint and that in the process Odom was shot twice;
confessions from Nickerson that he shot Odom and from Conway that he
participated in the robbery; recovery of a portion of the stolen property—Duran’s
cell phone—in Nickerson’s possession; and testimony from the medical examiner establishing
that Odom had been shot fatally once in the back and once in the back of the
head.  The foregoing evidence is more than sufficient to establish the corpus
delicti of the crime—that both a robbery and a murder were perpetrated by
someone.  

The evidence in this case is sufficient for a
rational jury to find all of the elements of capital murder beyond a reasonable
doubt.  Conway’s first and second issues are overruled.  

III

In his third issue, Conway argues the trial court
erred in overruling his objection to an autopsy photograph which was admitted
into evidence and shown to the jury.  The photograph complained of on appeal
was a full-color depiction of the deceased complainant’s entire brain after its
removal from the complainant’s body during the autopsy.  The picture revealed
the entry point into the brain of the bullet that struck complainant in the
back of the head.  Conway argues the picture should have been excluded on the
grounds that the probative value of the picture was outweighed by the danger of
unfair prejudice.  Tex. R. Evid. 403.

Defense counsel lodged an objection to the photograph
when the State offered eighteen exhibits into evidence en masse.  The exhibits
were all photographs from Odom’s autopsy.  At a bench conference, trial counsel
stated the grounds for his objection:

The only one I have an objection to is that one, Judge. 
Because I think it’s not — I understand he’ll describe an injury to it, but
it’s also reflected in the pathology report.  It’s also reflected in the
external photographs.  There is no dispute about the cause of death in this
case whatsoever and I just think, under 403, it’s just not relevant in that
regard.  I mean, it’s relevant — 

The prosecutor then
interrupted and said, “Do you know what I’m pointing at?  It shows the
bullet.”  The trial court then overruled defense counsel’s objection and
admitted all 18 photographs into evidence.  

Rule 403 provides that evidence that is otherwise
relevant may be deemed inadmissible under Rule 403 on the grounds that its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, the potential to mislead the jury, considerations of
undue delay, or needless presentation of cumulative evidence.  Tex. R. Evid.
403.  As a prerequisite for presenting a complaint for appellate review, the
record must show that a timely objection was lodged in the trial court that “stated
the grounds for the ruling that the complaining party sought from the trial
court with sufficient specificity to make the trial court aware of the
complaint, unless the specific grounds were apparent from the context” and
complied with the requirements of the Texas Rules of Evidence.  Tex. R. App. P.
33.1(a)(1)(A)-(B).  

We note initially that although defense counsel’s
reference to “that one” when objecting to a photograph may have made it clear
to the trial judge which photograph counsel found objectionable, it is of little
help to this court in determining which of the 18 submitted photographs Conway
claims should have been excluded.  However, we do not reach the question of
whether defense counsel’s failure to identify the objectionable photograph by
exhibit number was sufficient to preserve the complaint for appellate review because
the failure to state a particular basis for objection under Rule 403 preserves
nothing for this court to review.  As such, we do not reach an analysis of
whether the autopsy photograph should have been excluded under the Rule 403 balancing
test.    

There are five separate and distinct grounds that
serve as a basis for objection under Rule 403.  Defense counsel did not specify
any of these grounds as a basis for his objection, and therefore did not
preserve error.  See Williams v. State, 930 S.W.2d 898, 901 (Tex.
App.—Houston [1st Dist.] 1996, pet. ref’d) (“Rule 403 provides five distinct
grounds for excluding otherwise relevant evidence.  Appellant’s “general Rule
403” objection was too general and forced the trial judge to determine which of
the five specific grounds was applicable.  Thus, it did not give the judge any
specific ground on which to rule.”); Phelps v. State, 999 S.W.2d 512,
520 (Tex. App.—Eastland 1999, pet. ref’d) (holding a general 403 objection to
admission of extraneous offenses was insufficient to preserve error).  A Rule
403 objection must specify one of the five distinct grounds for objection to
preserve error for appellate review.  Conway’s trial objection did not meet
this standard.  Conway’s third issue is overruled.  

* * *

For the
foregoing reasons, we affirm the trial court’s judgment.

 

                                                                                                                                                                                                                                    /s/        Justice
Jeffrey V. Brown

                                                                                    Judge

 

 

 

Panel consists of Justices Anderson,
Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).